UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

DAVON MILLER,                                   :
     Plaintiff,                              :
                                             :
     v.                                      :      Case No. 3:20cv872(MPS)
                                             :
GOVERNOR NED LAMONT, ET AL.,                    :
     Defendants.                             :

## INITIAL REVIEW ORDER

The plaintiff, Davon Miller, is currently incarcerated at Garner Correctional Institution in

Newtown, Connecticut.  He files this civil rights action pursuant to 42 U.S.C. § 1983 against

Governor Ned Lamont, Commissioner Rollin Cook, Deputy Commissioner Angel Quiros,

Wardens Caron and Bowles, Deputy Wardens Kenny Thomas and Baymon, District

Administrator William Mulligan, Director of Offender Classification and Population

Management Maiga, Lieutenants Grimaldi, Ouelette, and Jones, Records Specialist BS Zipp,

Counselor Supervisor Long, Counselor Blue, Counselor/Administrative Remedies Coordinator

Saunders, Disciplinary Investigators Leone, Cieboter, and Clark, Correctional Officer Canales,

and the Department of Correction.

He asserts claims that Deputy Commissioner Quiros, OCPM Director Maiga, Warden

Caron, Lieutenants Grimaldi, Ouelette, and Jones, Disciplinary Investigators Leone, Cieboter,

and Clark, Counselor Blue, Correctional Officer Canales, and District Administrator Mulligan

violated his rights under the First Amendment and his right to due process under the Fourteenth

Amendment in connection with his placement on administrative detention status at Northern

Correctional Institution on April 3, 2020 and the issuance of a disciplinary report on April 4,

2020 for conduct that occurred at Carl Robinson Correctional Institution on April 2, 2020.  He

also challenges the alleged failure of Records Specialist Zipp in June 2020 to apply presentence jail credit to his sentence and the decision by Warden Bowles, Deputy Warden Baymon, Counselor Supervisor Long, and Counselor/Administrative Remedies Coordinator Saunders in April and May 2020 to deny his request to sign and submit his community release packet. For the reasons set forth below, the Court will dismiss the complaint in part.

## I.     Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* In undertaking this review, the Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

2

## II.     Factual Allegations

On April 2, 2020, correctional officers, who were not wearing masks, distributed masks to the inmates in the plaintiff's dorm in response to the outbreak of the COVID 19 pandemic. *See* Compl., ECF No. 1, at 36.  Later that day, prison officials, including Warden Caron and Deputy Warden Thomas, visited the plaintiff's dorm.  *Id.*  During that visit, inmates in the plaintiff's housing unit gestured to the plaintiff to speak up for them regarding the issuance of masks and precautions that were being taken by prison officials in response to the COVID 19 pandemic.  *Id.*  The plaintiff then asked what was going on and why officers and prison officials were not wearing masks.  *Id.*  He discussed or argued about these questions and issues with Warden Caron before Caron left the housing unit.  *Id.* at 8 ¶ 10; at 36.

On April 3, 2020, Deputy Commissioner Quiros, OCPM Director Maiga, and Warden Caron authorized the plaintiff's transfer from Carl Robinson, a level 3 facility to Northern, a level 5 facility.  *See* Compl., ECF No. 1, at 3-4 ¶ 1.  At the time, the plaintiff had not received a disciplinary report or engaged in any other behavior that would warrant his transfer to Northern. *Id.* at 4 ¶ 2.

Upon his arrival at Northern, Lieutenant Jones placed the plaintiff on administrative detention status and completed a CN 9401 Restrictive Housing Unit Status Order form.  *Id.* ¶ 4. On April 4, 2020, the plaintiff received a copy of the CN 9401 Restrictive Housing Unit Status Order form that had been signed by Lieutenant Jones on April 3, 2020 and also received a disciplinary report charging him with Impeding Order, a Class A offense, that had been issued by Correctional Officer Canales and approved by Lieutenant Oulette on April 4, 2020.  *Id.* at 5 ¶ 5; at 23.  The disciplinary charge was based on information that had been discovered after an

3

investigation of an incident that had occurred at Carl Robinson on April 2, 2020 while prison officials were addressing the concerns of inmates who were housed in the Dorms. *Id.* The investigation allegedly revealed that the plaintiff had "engag[ed] in disorderly conduct (grandstanding) which severely interfered with the facilities normal operation." *Id.*

A prison official at Northern assigned Leone and Cleboter to investigate the disciplinary charge filed against the plaintiff. *Id.* at 6 ¶ 7. The plaintiff requested that Investigators Leone and Cleboter dismiss the disciplinary charge on the ground that it was based on a hearsay statement and a telephone call allegedly made by him that had not been documented in written form or provided to him for review. *Id.* at 6-7 ¶ 7. In addition, no video evidence was preserved or provided to the plaintiff. *Id.* Investigators Leone and Cleboter refused to dismiss the disciplinary charge and the plaintiff refused to plead guilty to the charge. *Id.* Investigator Leone assigned Clark, a disciplinary investigator at Carl Robinson, to interview inmates who had witnessed the plaintiff's conduct on April 2, 2020. *Id.* at 7-8 ¶ 8. Three inmates provided statements. *Id.* at 18-20, 24.

The plaintiff provided a written statement in his defense and was present at the disciplinary hearing held on May 7, 2020. *Id.* at 8 ¶ 9; at 12-16, 24, 26. Lieutenant Grimaldi presided over the hearing and Lieutenant Cleboter was present as the plaintiff's advisor because Counselor Blue was unavailable. *Id.* at 8-9 ¶ 11; at 24, 26. Lieutenant Grimaldi found the plaintiff guilty of the disciplinary charge after considering the evidence presented, including the plaintiff's written statement, the witness statements, the advisor's report, and the investigator's report. *Id.* at 8 ¶ 9; at 26. Lieutenant Grimaldi imposed the following sanctions: fifteen days in punitive segregation, ninety days loss of commissary privileges, and sixty days forfeiture of the

4

Risk Reduction Earned Credit ("RREC").  *Id.* at 24.

On May 12, 2020, the plaintiff filed an appeal of the guilty finding.  *Id.* at 9 ¶ 13.  District Administrator Mulligan refused to respond to or dispose of the appeal.  *Id.*

On April 25, 2020, the plaintiff submitted an inmate request addressed to Warden Bowles and Deputy Warden Baymon at Northern asking why he was being confined at Northern given that (1) his classification had not been raised from a level 2, (2) Warden Caron had not recommended that he be placed on administrative segregation status, and (3) the disciplinary investigator had not recommended that he receive any sanctions in connection with the April 4, 2020 disciplinary charge.  *Id.* at 28.  On May 3, 2020, the plaintiff sent a request to Warden Bowles regarding his eligibility for community release.  Id. at 27.  The plaintiff mentioned that he had been eligible for consideration for community release as of April 12, 2020, but that Counselor Supervisor Long and Counselor Saunders were refusing to process his community release packet.  *Id.*

On May 8, 2020, in response to the plaintiff's April 25, 2018 request, Counselor Supervisor Long informed the plaintiff that he was being considered for administrative segregation placement and that a decision to release him into the community was on hold.  *Id.*  at 28.  On May 11, 2020, in response to the plaintiff's May 3, 2020 request, Counselor Supervisor Long informed the plaintiff that he was being considered for administrative segregation placement status and that his community release packet would not be processed until a decision was made regarding his placement on administrative segregation status.  *Id.* at 27.

**III.    Discussion**

The plaintiff contends that the defendants violated his First Amendment rights and his

5

Fourteenth Amendment procedural due process rights in connection with the issuance and disposition of the April 4, 2020 disciplinary report, the decision to postpone consideration of this community release package, the failure to timely process his grievances, and his transfer to Northern. He also challenges the application of presentence jail credit to his sentence. He generally asserts that the defendants engaged in conduct that constituted negligence, negligent supervision, and intentional infliction of emotional distress. He seeks injunctive relief from defendants Quiros, Mulligan, Maiga, Long, ARC Saunders, Counselor Saunders, Grimaldi, and Zipp in their official capacities and monetary damages from all defendants in their individual capacities. *Id.* at 10-11.

### A.       Department of Correction and Deputy Warden Thomas

The Department of Correction and Deputy Warden Thomas are listed in the caption on the first page of the complaint but are not otherwise mentioned in the body of the complaint. To state a claim under section 1983, a plaintiff must allege facts showing that the defendant, a person acting under color of state, law deprived him of a federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).

The Supreme Court has held that a state agency is not a person within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (and "governmental entities," like state agencies, "that are considered arms of the State," are not persons within meaning of 42 U.S.C. § 1983) (internal quotation marks and citation omitted). The Connecticut Department of Correction is a department within executive branch of the government of the State of Connecticut. *See* Conn. Gen. Stat. § 4-38c ("There shall be within the executive branch of state government the following departments . . . Department of

6

Correction"). As a government department, it is not a person subject to liability under section 1983. *See Milner v. Mulligan*, No. 3:17-CV-1341 (SRU), 2017 WL 4678185, at *2 (D. Conn. Oct. 17, 2017) ("The Department of Correction, a state agency, is not a person within the meaning of section 1983."); *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 288 (D. Conn. 2008) ("Department of Corrections is an arm of the State of Connecticut") (citation omitted); *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 271 (D. Conn. 2001) (dismissing claims against Connecticut Department of Correction because it "is not a 'person' within the meaning of § 1983") (citations omitted). Because the Department of Correction is not a person within the meaning of section 1983, any claims asserted against it are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

The plaintiff describes Henry Thomas as a deputy warden at Carl Robinson. He asserts no facts regarding the conduct of Deputy Warden Thomas. As such, he has failed to state a plausible claim that Thomas violated his federally protected rights. The complaint is dismissed to the extent that it names Deputy Warden Thomas as a defendant. *See* 28 U.S.C. § 1915A(b)(1).

### B.    Commissioner Cook and Governor Lamont

The plaintiff alleges that Commissioner Cook oversees all correctional facilities in Connecticut and that Commissioner Cook and Governor Lamont implemented a policy of transferring inmates who had contracted COVID 19 to be placed in isolation at Northern. Compl. at 9 ¶ 15. He claims that prior to announcing the policy in a press release, prison officials "unlawfully" transferred him and twenty other inmates to Northern. *Id.*

There are no allegations that the policy of isolating inmates who contracted COVID 19 by transferring them to a unit at Northern violated the plaintiff's federally protected rights.

7

Furthermore, the plaintiff claims that Deputy Commissioner Quiros, OCPM Director Maiga, and Warden Caron authorized his transfer to Northern because of an incident that occurred at Carl Robinson on April 2, 2020.  The United States Supreme Court has held that an inmate has no right to be housed at the prison of his or her choice.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules").

Accordingly, his claim that he was "unlawfully" transferred to Northern prior to the announcement of the policy that those inmates who had contracted COVID 19 would be transferred to Northern to be placed in an isolation unit fails to state a claim upon which relief may be granted and is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### C.      Fourteenth Amendment Due Process Claim – Grievance Procedures

The plaintiff alleges that Administrative Remedies Coordinator Saunders interfered with his ability to file grievances.  Compl. at 9 ¶ 14.  Attached to the complaint is a request sent by the plaintiff to ARC Saunders on April 29, 2020 requesting information about the status of grievances that he had submitted for consideration.  *Id.* at 29.  On May 1, 2020, in response to this request, ARC Saunders indicated that he or she had received the plaintiff's grievances but that he needed to be patient because she needed to let the grievances pend for several days due to the COVID 19 protocol.  *Id.*  Thus, ARC Saunders did not refuse to respond to the plaintiff's grievances.  Rather, she stated that responses to the grievances would be delayed.

Inmates have no constitutional entitlement to grievance procedures, to receive a response

to a grievance, or to have a grievance properly processed.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures' ") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)).  As the plaintiff has no constitutionally protected right to file a grievance or request, the allegations that ARC Saunders neglected to timely respond to his grievances in April and May 2020 fails to state a plausible claim under the Fourteenth Amendment.  The Fourteenth Amendment due process claim asserted against ARC Saunders is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### D.      Fourteenth Amendment Due Process Claim - Community Release

The plaintiff alleges that he was eligible for consideration for community release on April 12, 2020, but as of May 3, 2020, Counselor Supervisor Long and Counselor Saunders had refused to permit him to sign and submit his community release packet because he had received a disciplinary report on April 4, 2020.  On May 8 and 11, 2020, Counsel Supervisor Long informed the plaintiff that prison officials at Northern were in the process of determining whether to place him on administrative segregation status and that his consideration for community release was on hold pending a decision about his classification to a more restrictive status.  The plaintiff claims that Warden Bowles, Deputy Warden Baymon, Counselor Supervisor Long, and Counselor Saunders denied his requests to sign and submit his community release package during the months of April and May 2020 in violation of his Fourteenth Amendment due process rights.

A convicted and sentenced individual has "no constitutional or inherent right to be

conditionally released" from incarceration before the end of his or her valid sentence.  *See McAllister v. N.Y. State Div. of Parole*, 432 F. App'x 32, 33 (2d Cir. 2011) (quoting *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)).  Additionally, "[i]t is well settled that prisoners generally do not have a protected liberty interest in classifications that impact their eligibility to participate in rehabilitative programs."  *Taylor v. Levesque*, 246 F. App'x 772, 774 (2d Cir. 2007) ("Connecticut has not granted inmates, by regulation or statute, a protected interest in their security classification; the matter is committed to the discretion of the Commissioner of Corrections."); *see also Green v. Martin*, 224 F. Supp. 3d 154, 177 (D. Conn. 2016) (same); *Petitpas v. Martin*, No. 3:17-cv-1912 (JAM), 2018 WL 5016997, at *3 (D. Conn. Oct. 15, 2018) (dismissing a prisoner's due process claim, noting that he "d[id] not, for example, allege facts or state law protections that give rise to any constitutional liberty interest to be free from a higher risk classification on the basis of his conviction for a forcible sex assault crime and his classification as a sex offender"); *Vega v. Rell*, No. 3:09-cv-737 (VLB), 2012 WL 1298678, at *2 (D. Conn. Apr. 16, 2012) (noting that inmates have "no inherent liberty interest in receiving good time credit" and that the Connecticut law that creates RREC does not create a liberty interest "because the commissioner is not required to make RREC available to all inmates; he has the discretion to make it available"); *Green v. Comm'r of Correction*, 184 Conn. App. 76, 89, 194 A.3d 857, 865 (2018) ("Thus, as precedent from this court and our Supreme Court makes clear, the petitioner in the present case does not have a liberty interest in risk reduction credits because, as the petitioner himself admitted in his petition, the commissioner has broad discretion to implement the RREC program."), *cert. denied*, 330 Conn. 933, 195 A.3d 383 (2018).

Because the plaintiff does not have a liberty interest in release to a community or

residential placement, the decision by Warden Bowles, Deputy Warden Baymon, Counselor Supervisor Long, and Counselor Saunders to postpone consideration of his community release application did not violate his procedural due process rights. The Fourteenth Amendment due process claim asserted against Warden Bowles, Deputy Warden Baymon, Counselor Supervisor Long, and Counselor Saunders is dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

### E.     Fourteenth Amendment Due Process Claim - Transfer to Northern

The plaintiff alleges that on April 3, 2020, Deputy Commissioner Quiros, OCPM Director Maiga, and Warden Caron were responsible for transferring him from Carl Robinson, a level 3 facility, to Northern, a level 5 facility. At the time, the plaintiff had been classified to an overall risk level of 2. He contends that he did not receive notice of the basis for his transfer to Northern until April 4, 2020 when Lieutenant Jones provided him with a CN 9401 Restrictive Housing Unit Status Order indicating that he had been placed on administrative detention.

As indicated above, an inmate has no constitutional right to be confined at a particular prison facility. *See Olim,* 461 U.S. at 245 (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum,* 427 U.S. at 225 (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules"). Because the plaintiff does not have a protected liberty interest in confinement at a particular prison facility, his allegation that Deputy Commissioner Quiros, OCPM Director Maiga, and Warden Caron authorized his transfer to Northern, in and of itself does not state a claim of a violation of his Fourteenth Amendment rights. This Fourteenth Amendment due process claim

11

asserted against Deputy Commissioner Quiros, OCPM Director Maiga, and Warden Caron is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

> ## F. Fourteenth Amendment Due Process Claim
> ## Issuance and Disposition of Disciplinary Report

The plaintiff asserts multiple arguments regarding due process violations that occurred in connection with the issuance of the disciplinary report on April 4, 2020 charging him with impeding order. He challenges the investigation of the charge, his ability to prepare for the hearing and to present evidence and participate during the hearing, and the sufficiency of the evidence relied upon to support the guilty finding. The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). "Liberty interests protected by the Fourteenth Amendment may arise from two sources -- the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court reexamined "the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause." *Id.* at 474. The Court explained that in the prison setting, liberty interests protected by Due Process "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The Court held that Conner's confinement in segregation for thirty days "did not present the type of

12

atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.*
at 486. Thus, an inmate has a protected liberty interest only if the disciplinary sanctions caused
him to suffer an "atypical and significant hardship" in comparison to "the ordinary incidents of
prison life." *Id.*

The plaintiff contends that Officer Canales and Lieutenant Oulette deprived him of
procedural due process in connection with the issuance of the disciplinary report for impeding
order, Investigators Leone, Cleboter, and Clark and Counselor Blue deprived him of due process
in connection with gathering evidence and preparing for the hearing, Lieutenant Grimaldi
deprived him of procedural due process during the hearing held to dispose of the disciplinary
report, and Lieutenant Grimaldi and District Administrator Mulligan deprived him of procedural
due process in connection with the decision to find him guilty of the disciplinary charge. At the
conclusion of the hearing, Lieutenant Grimaldi imposed sanctions, including loss of ninety days
of commissary privileges, confinement in punitive segregation for fifteen days and forfeiture of
sixty days of RREC.

The loss of RREC is a sanction that affects the duration of the plaintiff's confinement.
*See* State of Connecticut Department of Correction Administrative Directive 4.2A(4)
(2013), *available at* https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0402Apdf.pdf ("RREC could
affect an inmate's discharge date if in compliance."). Because the plaintiff challenges sanctions
affecting both the duration of his confinement and the conditions of his confinement, his due
process claims relating to the issuance of the disciplinary report and disposition of the
disciplinary charge at a hearing are barred by the favorable termination rule set forth in *Heck v.
Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a claim for money

damages is not cognizable under 42 U.S.C. § 1983 if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ..., or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87 (citation omitted).  In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the favorable termination rule to a prisoner's challenge to the procedures used in a disciplinary proceeding that resulted in a change to the prisoner's sentence, including the loss of accumulated good-time credits.  *See id.* at 648.  Thus, a prisoner may not proceed with a § 1983 action challenging the imposition of a disciplinary sanction that affects the length of his or her sentence "unless he [or she] has shown that the sanction ... ha[s] been overturned through administrative channels or by a state or federal court."  *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006).

In *Peralta*, the Second Circuit considered a situation in which prison officials had subjected a prisoner to sanctions that affected the duration of his confinement as well as sanctions that affected only his conditions of confinement.  The court held that "a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but ... he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.*"  467 F.3d at 104.  The Second Circuit remanded the case to the district court with instruction for the court to ascertain whether the prisoner had formally agreed to waive all claims challenging the duration of his imprisonment. *See id.* at 106.

If the plaintiff was to prevail on his challenge to the disciplinary report issued to him for

impeding order, the guilty finding would be called into question.  Because the plaintiff has not demonstrated that the disposition of the disciplinary charge has been invalidated, *Heck* bars the due process claims arising from the disposition of the disciplinary charge unless the plaintiff "abandon[s], not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding he is attacking in [this] § 1983 suit." *Id.* at 104.

Accordingly, the plaintiff shall advise the Court in writing, within twenty days of the filing date of this Order, whether, in order to pursue his claims relating to disciplinary sanctions affecting the conditions of his confinement, he waives *for all time* all claims relating to disciplinary sanctions affecting the duration of his confinement (*i.e.*, the forfeiture of 60 days of RREC).  If so, he may be allowed to proceed with his Fourteenth Amendment procedural due process claims challenging the issuance of the disciplinary report by Officer Canales and Lieutenant Oulette, the failure of Investigators Leone, Cleboter, and Clark and Counselor Blue to assist him in securing and viewing evidence in order to assert an effective defense to the disciplinary charge at the hearing, the sufficiency of the evidence relied upon by Lieutenant Grimaldi to reach the decision that he was guilty of the charge and the failure of District Administrator Mulligan to consider the due process violations and overturn the guilty finding on appeal.

### G.     First Amendment Claim

The plaintiff alleges that the issuance of the disciplinary report for impeding order was based in part on a telephone call that he made on April 2, 2020 during which he allegedly admitted to the individual to whom he had made the call that he had argued with Warden Caron

earlier that day regarding inmates "needing to be release[d] and why staff [were] not wearing masks." Compl. at 8 ¶ 10. The plaintiff contends that he made these statements to Warden Caron because he was "clearly concerned about his health and well being and that it is a violation of the 1st Amendment to penalize someone for this." *Id.* The plaintiff does not otherwise refer to the First Amendment in the body of the complaint. The Court liberally construes these allegations as a claim that the defendants issued the disciplinary report for impeding order in retaliation for the plaintiff's exercise of his First Amendment right to free speech.

The Supreme Court has held that "[i]n a prison context, an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Jones v. N.C. Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129 (1977) (internal quotation marks omitted). Thus, not every statement made by an inmate to a correctional officer or official constitutes protected speech.

The Second Circuit has repeatedly recognized that the filing of a written prison grievance or complaint constitutes protected conduct or speech in the context of a First Amendment retaliation claim. *See Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) ("Since the filing of prison grievances is a constitutionally protected activity, Davis meets the first prong of the test.") (citing *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988); *see also Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004) ("[Plaintiff] has sufficiently alleged ... participation in protected activity: the use of the prison grievance system." With regard to whether an inmate's oral speech is constitutionally protected, the Second Circuit "has yet to articulate a bright line rule." *Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL

16

1614346, at *17 (S.D.N.Y. Mar. 31, 2018) (citations omitted).

In cases involving oral complaints or grievances, courts have distinguished between oral grievances and oral confrontations or arguments between a prisoner and a correctional officer and have concluded that the latter do not constitute protected speech.  *See, e.g.*, *Rodriguez v. Phillips,* 66 F.3d 470, 479 (2d Cir.1995) ("In the context of the confrontation described in [the plaintiff's] own words, there was no clearly established First Amendment right to approach and speak to Officer Rubin.") (emphasis added); *Cosby v. McDonald*, No. 3:20CV432(MPS), 2020 WL 5026550, at *7 (D. Conn. Aug. 25, 2020) (dismissing retaliation claim on ground that inmate's "verbal argument with CTU Officer McDonald in connection with his request for a new pair of boxer shorts and an undershirt" did not constitute "exercise of protected speech").; *McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *26–27 (S.D.N.Y. Mar. 31, 2016) (observing that "courts in the Second Circuit and others have distinguished between unambiguously protected activity and situations where an inmate verbally confronts a prison official.") (citing, *inter alia*, *Young v. Ice*, No. 14-CV-1475, 2015 WL 471675, at *3 (N.D. Ohio Feb. 4, 2015) ("While prisoners have a clear right protected by the First Amendment to file formal grievances against prison officials, arguing with corrections officers, or being insolent or disrespectful toward corrections officers is not conduct protected by the First Amendment." (citation omitted)); *Martin v. Hurley*, No. 14-CV-66, 2014 WL 7157336, at *2 (E.D. Mo. Dec. 15, 2014) ("Prisoners have no constitutionally protected right to confront staff and discuss issues with them, particularly when ordered not to do so."); *Rossi v. Goord*, No. 00-CV-1521, 2006 WL 2811505, at *10 n.16 (N.D.N.Y. Sept. 28, 2006) ("The questioning by an inmate of a lawful order given by a corrections officer, however, does not constitute protected

17

speech deserving of First Amendment protection.") (citing *Rodriguez,* 66 F.3d at 478–

79), *reconsideration granted in part on other grounds*, 2007 WL 952051 (N.D.N.Y. Mar. 29,

2007); *Garrido v. Coughlin*, 716 F. Supp. 98, 101 (S.D.N.Y. 1989) ("While there is a claim of

retaliation here ..., it was not for exercise of [the plaintiff's] First Amendment rights; rather, the

alleged retaliation arose out of a verbal confrontation.")).

      The facts and exhibits filed in support of the allegations asserted in the complaint do not

suggest that the plaintiff's verbal confrontation or discussion with Warden Caron on April 2,

2020 regarding the issue of whether correctional staff were or would be wearing masks to

prevent the spread of COVID 9 constituted the exercise of protected speech.  *See Carl v. Griffin*,

No. 08-CV-4981 (RMB/MHD), 2011 WL 723553, at *5 (S.D.N.Y. Mar. 2, 2011) ("Plaintiff's

brief and isolated verbal encounter with Griffin does not constitute protected First Amendment

speech.  To construe it as such would elevate every verbal exchange between a prison employee

and a prisoner to the level of protected speech under the First Amendment.") (internal quotation

marks, brackets and citation omitted).  Thus, the plaintiff has not met the first element of a

retaliation claim and the claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

      **H.**    **Presentence Jail Credit Claim**

      On May 18, 2020, the plaintiff sent a request to the records department stating the date

listed by the Department of Correction as his maximum release date, September 2, 2020, was

incorrect.  Compl. at 31.  The plaintiff contended that if the records department applied all the

presentence jail credit to which he was entitled to his five-year sentence imposed on November

3, 2017, his maximum release date should have been a date in August 2020.  *Id.*  On June 2,

2020, Records Specialist Zipp provided an explanation of how the plaintiff's presentence jail

credit had been applied to his five-year concurrent sentences imposed in three separate criminal

cases on November 3, 2017 and why the plaintiff's maximum release date, as of June 2, 2020,

was October 20, 2020.  *Id.* at 32.  Zipp indicated that as of May 1, 2020, the plaintiff's maximum

release date had been August 21, 2020 but that on May 7, 2020, Lieutenant Grimaldi found the

plaintiff guilty of a disciplinary charge and had imposed a sanction of 60 days forfeiture of

RREC.  *Id.*  Thus, as of June 2, 2020, the plaintiff's maximum release date was October 20,

2020.  *Id.*  Attached to Zipp's letter were copies of the plaintiff's sentence time sheets showing

the application of presentence credit and RREC and the forfeiture of RREC credits.  *Id.* at 33-35.

The plaintiff alleges that Records Specialist Zipp miscalculated the number of days of

presentence jail credit that should have been applied to his sentence.  The plaintiff seeks an order

directing Zipp to correctly apply his presentence jail credit and to release him from incarceration.

The plaintiff does not indicate how Zipp's application of his presentence jail credit or the

forfeiture of RREC credits to his five-year sentence was incorrect.   Nor is any miscalculation or

misapplication of credit to the plaintiff's sentence apparent from the explanation provided to the

plaintiff by Records Specialist Zipp on June 2, 2020 or the time sheets showing the application

of presentence and RREC credits to the plaintiff's sentence.  The Court concludes that the

plaintiff has not stated a claim that Records Specialist Zipp violated his constitutionally or

federally protected rights.

In any event, the Supreme Court "has held that a prisoner in state custody cannot use a §

1983 action to challenge "'the fact or duration of his confinement.'" *Wilkinson v. Dotson*, 544

U.S. 74, 78 (2005) (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 489 (1973) and citing *Wolff v.*

*McDonnell,* 418 U.S. 539, 554 (1974); *Heck,* 512 U.S. at 481; *Edwards,* 520 U.S. at 648).

Rather, "[h]e must seek federal habeas corpus relief (or appropriate state relief) instead." *Id.*

Because the plaintiff seeks immediate release from incarceration, he may not pursue his claim that Zipp has failed to correctly apply presentence credit to his sentence in a section 1983 action. The court will not construe this action as a habeas petition because the plaintiff does not allege that he attempted to exhaust this claim by pursuing it in a state habeas petition. Nor does the plaintiff allege that he attempted to exhaust the claim using the grievance procedures available within the Department of Correction. The claim asserted against Zipp is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

## I.    State Law Claims

In the introductory paragraph of the complaint, the plaintiff states that he is asserting state law tort claims of negligence, negligent supervision and intentional infliction of emotional distress. Compl. at 2. He does not otherwise mention these claims in the body of the complaint. To the extent that the plaintiff asserts these state law claims against Quiros, Mulligan, Maiga, Long, ARC Saunders, Counselor Saunders, Grimaldi, and Zipp in their official capacities for injunctive relief, the claims are barred by the Eleventh Amendment. *See Vega v. Semple*, 963 F.3d 259, 283-84 (2d Cir. 2020) (holding plaintiff's claims for "prospective relief against Defendants in their official capacity for violations of the Connecticut Constitution and state law . . . are indeed barred by the Eleventh Amendment under the *Pennhurst* doctrine.") (internal quotation marks omitted).

### 1.    Intentional Infliction of Emotional Distress – Individual Capacities

To state a claim for intentional infliction of emotional distress, a plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should

20

have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059, 1062 (2000) (internal quotation marks and citation omitted).  To be held liable for intentional infliction of emotional distress, one's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* at 210–11 (internal quotation marks and citation omitted).

The plaintiff offers no facts in support of his claim that the defendants intended to inflict emotional distress upon him.  The Court does not find that the defendants' alleged conduct was "extreme and outrageous," as those terms are interpreted at common law.  The standard in Connecticut to demonstrate extreme and outrageous conduct is "stringent."  *Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998). "[E]xtreme and outrageous" conduct is defined as that which "exceed[s] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. New Haven*, 220 Conn. 225, 267, 597 A.2d 807, 828 (1991).  Accordingly, the Court concludes that the plaintiff has not stated a plausible claim of intentional infliction of emotional distress against any defendant.  The claim of intentional infliction of emotional distress asserted against the defendants in their individual capacities is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### 2.    Negligence Claims – Individual Capacities

The plaintiff does not articulate the basis for his negligence and negligent supervision

claims.  In Connecticut, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  Conn. Gen. Stat. § 4-165(a).  The Connecticut Supreme Court has explained that section 4–165 means that "state employees may not be held personally liable for their negligent actions performed within the scope of their employment."  *Miller v. Egan*, 265 Conn. 301, 318–19, 828 A.2d 549, 561–62 (2003).  A state employee may be held personally liable acts in the scope of her employment when the employee's actions are "wanton, reckless, or malicious"—which goes beyond negligence and denotes "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."  *Martin v. Brady*, 261 Conn. 372, 379, 802 A.2d 814, 819 (2002) (internal quotation marks and citation omitted).

This claim is brought against the defendants, who are state prison employees or officials, for their allegedly negligent actions and/or inactions taken within the scope of their employment. There are no allegations that the conduct of these defendants was "highly unreasonable" or that it involved "an extreme departure from ordinary care."  *Id.*  Accordingly, the negligence claims asserted against the defendants in their individual capacities are barred by Conn. Gen. Stat. § 4-165(a) and are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     The claims asserted against the Department of Correction, Commissioner Cook, Governor Lamont, and Deputy Warden Thomas; the Fourteenth Amendment due process claim asserted against ARC Saunders; the Fourteenth Amendment due process claim related to the

decision by Warden Bowles, Deputy Warden Baymon, Counselor Supervisor Long, and Counselor Saunders to postpone consideration of the plaintiff's community release application; the Fourteenth Amendment due process claim that Deputy Commissioner Quiros, OCPM Director Maiga, and Warden Caron authorized the plaintiff's transfer to Northern on April 3, 2020; the First Amendment retaliation claim; and the state law negligence and intentional infliction of emotional distress claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The claim that Records Specialist Zipp miscalculated the number of days of presentence jail credit that should have been applied to his sentence is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

(2)     Within twenty (20) days of the date of this order, the plaintiff shall advise the Court in a Written Notice, whether he waives *for all time* all claims in this action relating to disciplinary sanctions affecting the duration of his confinement (*i.e.*, the forfeiture of 60 days of RREC) in order to proceed with his Fourteenth Amendment procedural due process claims challenging the issuance of the disciplinary report by Officer Canales and Lieutenant Oulette, the failure of Investigators Leone, Cleboter and Clark and Counselor Blue to assist him in securing and viewing evidence in order to assert an effective defense to the disciplinary charge at the hearing, the sufficiency of the evidence relied upon by Lieutenant Grimaldi to reach the decision that he was guilty of the charge, and the failure of District Administrator Mulligan to consider the due process violations and overturn the guilty finding on appeal.

If the plaintiff chooses not to file the Notice within the time specified, the Court will dismiss the Fourteenth Amendment procedural due process claims challenging the issuance of the disciplinary report by Officer Canales and Lieutenant Oulette, the failure of Investigators

Leone, Cleboter and Clark and Counselor Blue to assist him in securing and viewing evidence in order to assert an effective defense to the disciplinary charge at the hearing, the sufficiency of the evidence relied upon by Lieutenant Grimaldi to reach the decision that he was guilty of the charge and the failure of District Administrator Mulligan to consider the due process violations and overturn the guilty finding on appeal without prejudice and will direct the Clerk to enter judgment and close this case.

      SO ORDERED at Hartford, Connecticut this 19th day of October, 2020.


               _____/s/_____
               Michael P. Shea
               United States District Judge