UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVON MILLER, *Plaintiff,* | : : : : | |
| v. | : : | Civil No. 3:20-cv-872 (OAW) |
| GOVERNOR NED LAMONT, et al., *Defendants.* | : : : : | |

## <u>RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

At all times relevant to his claims, Davon Miller ("Plaintiff" or "Mr. Miller") was incarcerated within the custody of the Connecticut Department of Correction ("CT DOC"). He asserts a violation of his due process rights in connection with a disciplinary hearing and resultant finding that he committed an "Impeding Order" offense. Plaintiff challenges his punishment, including being placed in punitive segregation for fifteen days; losing his commissary privileges for ninety days; and sixty days of lost risk reduction earned credits. Currently before the court are Defendants' Motion for Summary Judgment, ECF No. 52, and Plaintiff's Motion for Judgment on the Pleadings, ECF Nos. 53, 54.[1] For the reasons articulated herein, Defendants' Motion for Summary Judgment is **GRANTED,** and Plaintiff's Motion for Judgment on the Pleadings is **DENIED.**

## I.    BACKGROUND

The following facts are derived from Defendants' Statement of Fact and supporting exhibits. *See* ECF No. 52-2. Although Defendants' Motion included the requisite notice

---

[1] Plaintiff's filing was docketed twice; once as a memorandum in opposition to Defendants' Motion and once as a Motion for Judgment on the Pleadings. *See* ECF Nos. 53 and 54.

to Plaintiff, explaining the consequences of failing to file a Statement of Facts in Opposition in accordance with Local Rule 56(a)2, *see* ECF 52-9, Plaintiff has not filed his own Statement of Facts.   Thus, all facts asserted in the defendants' statement are deemed admitted to the extent that they are supported by the evidentiary exhibits submitted in support of the Motion.   *See* Local Rule 56(a)1.[2]

At all times relevant to Plaintiff's claims, he was an incarcerated inmate in the custody of Connecticut's state Department of Correction (DOC).  ECF No. 52-2 at 1, ¶¶ 1—4.   On April 3, 2020, Plaintiff was transferred from Carl Robinson Correctional Institution ("Robinson") to Northern Correctional Institution ("Northern").  *Id.* ¶¶ 2, 3.

On April 4, 2020, a correctional officer at Northern provided Mr. Miller with written notice that he had been charged with the disciplinary offense of "Impeding Order."  ECF No. 52-7 at 3 ¶¶ 10, 12.  "Impeding Order" is defined as "[i]mpeding the order or security of the unit by intentionally or recklessly causing a grave risk of alarm, unauthorized assembly; or [e]ngaging in disorderly conduct which severely interferes with the unit's normal operations."  ECF No. 52-2 at 7 ¶ 48.

Plaintiff was charged with "Impeding Order" on the theory that, while housed at Robinson, he had engaged in acts of "grandstanding."   ECF No. 52-7 at 3 ¶ 11. Specifically, Plaintiff was "accused of acting in a manner which drew attention to himself and increased tension within [his] dorm while the warden and deputy warden were addressing the unit's concerns and while masks were being handed out to other inmates" on April 2, 2020.  ECF No. 52-6 at 4 ¶ 14.  Plaintiff's alleged conduct appears to have been motivated by concerns that Robinson employees were not wearing face masks

---

[2] Because the court grants summary judgment on the merits of Plaintiff's claims, facts pertaining to the exhaustion of administrative remedies are omitted.

intended to prevent the spread of COVID-19.  ECF No. 52-7 at 35.  During a recorded telephone call, Plaintiff indicated that he was an advocate for (and leader of) other inmates, and that inmates needed to "stand together" to affect change in the masking practices of Robinson staff.  *Id.*  Correctional officers subsequently speculated that Plaintiff had orchestrated a mass refusal of inmate meals, and an attempted inmate work stoppage in the kitchen.  *Id.* at 36.

Officer Caneles[3] drafted the disciplinary report bringing the "Impeding Order" charge against Plaintiff.  *Id.* at 3 ¶ 9.  Subsequently, Investigators Thomas Leone and Richard Cieboter were assigned to gather evidence related to the charge.  *Id.* at 3, 4 ¶¶ 9, 14.  This assignment entailed review of an incident report prepared by Lieutenant Jason Oullette.  *Id.* at 4, ¶ 15.

As part of the disciplinary investigation, Investigator Leone interviewed Plaintiff.  *Id.* ¶ 16.  In doing so, Investigator Leone informed him of the evidence then-supporting the charge against him, and explained the investigation and hearing process.  *Id.* ¶¶ 16—18. Investigator Leone also asked Plaintiff if he desired the assistance of a disciplinary hearing advisor.  *Id.* ¶ 19.  Because Plaintiff wanted an advisor, Investigator Leone appointed Counselor Taisha Blue to serve in that capacity.  *Id.*

To present a defense to his disciplinary charge, Mr. Miller requested that Investigator Leone obtain statements from three witnesses.  *Id.* at 5 ¶ 20.  With assistance

---

[3] Although not done in the Complaint, ECF No. 1, when possible, the court will refer to the defendants by their first and last names, as reflected in the court's request for waiver of service dated May 6, 2021.  As stated in the Clerk of Court's Staff Notes on April 30, 2021, there were two officers with the surname "Canales" during the relevant timeframe.  This defendant apparently was not served, but counsel appeared on his behalf, *see* ECF No. 28.

from Investigator Clark[4], Investigator Leone was able to do so.  *Id.*  Plaintiff also was given

a copy of Lieutenant Ouellette's incident report, and he was permitted to submit a written

statement detailing his own recollection of pertinent events.  *Id.* ¶¶ 21—22.

In the complaint, Plaintiff implies (but does not explicitly state) that he requested

preservation of video evidence that could be used in his defense.  ECF No. 1 at 7.  The

complaint does not specify what would have been shown by such video, or how it would

have been useful to Plaintiff's defense.  *Id.*  For their part, the defendants deny that

Plaintiff ever requested that they obtain video evidence prior to his disciplinary hearing.

ECF No. 52-2 at 8 ¶ 58.

Prior to the disciplinary hearing, Investigator Leone provided Plaintiff with an

investigation report and a transcript of the telephone call during which Plaintiff purported

to be a leader of inmates seeking improved masking practices amongst Robinson staff.

*Id.* ¶¶ 52—54.  Plaintiff also was apprised of Investigator Leone's recommended sanction

(a fifteen-day placement in punitive segregation, a ninety-day loss of commissary

privileges, and a fifteen-day forfeiture of risk reduction earned credits).  ECF No. 52-7 at

35.  In her role as advisor, Counselor Blue made Plaintiff aware of the charges against

him, and the nature of evidence that could be admitted during his disciplinary hearing.

ECF No. 52-2 at 8 ¶ 57.

On May 7, 2020, Hearing Officer Michael Grimaldi presided over Plaintiff's

disciplinary hearing.  ECF 52-6 at 4 ¶ 12.  Plaintiff was permitted to attend this hearing.

ECF No. 52-2 at 9 ¶ 59.  All statements obtained from Plaintiff's witnesses were read

---

[4] Similar to Defendant Canales, *supra* n.3, the Clerk of Court's Staff Notes indicate that there were two officers with the surname "Clark" during the relevant timeframe.  Although this defendant apparently was not served, counsel appeared on his behalf, *see* ECF No. 28.

aloud during the hearing, and Plaintiff was permitted to submit a written statement in his defense. *Id.* ¶¶ 60, 62. Plaintiff also was permitted to testify and to present argument. *Id.* ¶ 63.

Hearing Officer Grimaldi ultimately found Plaintiff guilty of "Impeding Order". *Id.* ¶ 65. While Hearing Officer Grimaldi considered Plaintiff's evidence and arguments, he made credibility findings and gave greater weight to the evidence noted in Investigator Leone's report. *Id.* at 9—10 ¶¶ 66—69.

Hearing Officer Grimaldi imposed a disciplinary sanction comprised of: (1) a fifteen-day punitive segregation placement; (2) a ninety-day loss of commissary privileges; and (3) a sixty-day forfeiture of risk reduction earned credits. *Id.* at 10 ¶ 70. Several days following the disciplinary hearing, Plaintiff was provided with a copy of Hearing Officer Grimaldi's written decision. *Id.* ¶ 71.

On May 12, 2020, Plaintiff administratively appealed his adjudication of guilt. ECF No. 52-4 at 91—95. Among other arguments, Mr. Miller asserted that Investigator Leone and Hearing Officer Grimaldi refused to admit a video of Plaintiff's interaction with Robinson's deputy warden on the day of his alleged misconduct. *Id.* at 94. In a summary judgment affidavit, however, Hearing Officer Grimaldi states that he has no recollection of Plaintiff requesting to admit video evidence during his hearing. ECF 52-6 at 5 ¶ 24. On June 9, 2020, District Administrator William Mulligan denied Plaintiff's appeal. ECF No. 52-4 at 96.

## II.    SUMMARY JUDGMENT

### A.  Standard of Review

Summary judgment is appropriate if the moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citations omitted). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* The court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." *Id.* (citing Fed. R. Civ. P. 56(e) Advisory Committee Note (1963)).

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). "[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986)). Instead, the party opposing summary judgment must set forth in their response "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. 242, 243 (1986). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight,

summary judgment must be granted." *Brown*, 654 F.3d at 358 (internal quotation marks omitted).

At the summary judgment stage, the judge's function is "not to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue" of material fact for trial. *Anderson*, 477 U.S. at 249. The substantive law will identify which facts are material, and only disputes over facts that might affect the outcome of the case under the governing law will preclude the entry of summary judgment. *Id.* at 248.

## B. Discussion

The court has permitted Plaintiff to proceed with procedural due process claims challenging: (1) the issuance of a disciplinary report by Officer Canales and Lieutenant Oulette; (2) the failure of Investigators Leone, Cieboter, and Clark, and of Counselor Blue, to assist him in securing and in viewing evidence that would help him to assert an effective defense as to his disciplinary charge; (3) the sufficiency of evidence relied upon by Lieutenant Grimalidi in determining that Plaintiff was guilty of the disciplinary charge; and (4) the failure of District Administrator Mulligan to recognize the violations of Plaintiff's due process rights and to overturn his adjudication of guilt. ECF No. 18 at 2—3. In support of summary judgment, Defendants contend that: (1) Plaintiff failed to exhaust his administrative remedies in compliance with the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff cannot establish a violation of his due process rights; (3) District Administrator Mulligan had no personal involvement in any presumed violation of due process; and (4) qualified immunity shields the Defendants from liability. ECF No. 52 at 1. The court concludes that Plaintiff has failed to present sufficient evidence that Defendants violated

his due process rights and, therefore, their Motion for Summary Judgment, ECF No. 52, is **<u>GRANTED</u>.**

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S. Const. amend XIV.  Analysis of a procedural due process claim "proceeds in two steps: [the court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so [the court] ask[s] whether the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *see also Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009) (dismissing Plaintiff's due process claim alleging "inadequate assistance in preparing a defense in advance of his disciplinary hearing" where he failed to show prejudice from any deficiency and noting that such claims are subject to harmless error analysis).

Defendants specifically argue that the summary judgment record does not support a finding that Plaintiff was: (1) deprived of a liberty interest; (2) afforded insufficient process; nor (3) harmed by any presumed violation of his due process rights.  ECF No. 52-1 at 20—30.  The court agrees with each of these arguments.

### 1.  Liberty Interest

Plaintiff's due process claims are premised on the implicit notion that he has a constitutional liberty interest in remaining free of the disciplinary sanction imposed by Hearing Officer Grimaldi.  This sanction entailed: (1) a fifteen-day punitive segregation placement; (2) a ninety-day loss of commissary privileges; and (3) a sixty-day forfeiture of risk reduction earned credits.  ECF No. 52-7 at 35.

Inmates may possess liberty interests in remaining free from lengthy placements in standard punitive segregation conditions. *See Colon v. Howard*, 215 F.3d 227, 231—32 (2d Cir. 2000) (liberty interest implicated by an inmate's 305-day segregated housing placement). The United States Court of Appeals for the Second Circuit has recognized that "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). However, such confinement "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . ." *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004).

In the complaint, Plaintiff does not allege, nor does the summary judgment record indicate, that the conditions of his punitive segregated housing placement were atypically harsh. Therefore, there is no evidence to support a conclusion that Plaintiff had a liberty interest in avoiding his fifteen-day punitive segregation placement. *See Abrams v. Erfe*, 3:17-cv-1570 (CSH), 2018 WL 691714 at *13 (D. Conn. Feb. 2, 2018) (dismissing due process claims related to an inmate's 17-day placement in punitive segregation).

In addition, "courts within this Circuit have held that temporary deprivations of privileges, such as commissary trips and visitation, do not meet the standard of an atypical and significant hardship." *Mclellan v. Chapdelaine*, 3:16-cv-2032 (VAB), 2017 WL 388804 at *4 (D. Conn. Jan. 27, 2017). Thus, Plaintiff's ninety-day loss of commissary privileges does not contribute to a finding that he was deprived of a constitutional liberty interest. *See Muniz v. Cook*, 3:20-cv-1533 (MPS), 2020 WL 7078715 at *3 (D. Conn.

Dec. 3, 2020) ("[F]ifteen days in punitive segregation and ninety days loss of commissary privileges, do not constitute an atypical and significant hardship . . . .").

Finally, courts have determined that Connecticut's risk reduction earned credit statute "is discretionary in nature and confers no liberty interest in earned or future risk reduction credit." *Petaway v. Osden*, 3:17-cv-4 (VAB), 2019 WL 1877073 at *4 (D. Conn. April 26 2019) (citing *Green v. Comm'r of Corr.*, 184 Conn. App. 76, 86—87 (2018) ("[A]n inmate does not have a constitutionally protected liberty interest in … risk reduction credits … [because] the statutory scheme pursuant to which the commissioner is authorized to award those benefits is discretionary in nature.")).  Thus, Plaintiff's sixty-day loss of risk reduction earned credit also does not constitute deprivation of a constitutionally protected liberty interest.

### 2. *Sufficient Procedures*

Even were the court to presume that Plaintiff had a liberty interest in avoiding his disciplinary sanction, the summary judgment record still would not support a finding that Defendants deprived Plaintiff of sufficient process.  When an inmate has a liberty interest in remaining free from punitive segregation placement, prison officials must provide him with "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding [the matter.]" *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) (quotation marks and citation omitted).  If these requirements are met, "and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied." *Hewitt v. Helms*, 459 U.S. 460, 476 (1983); *see also Jordan v. Gifford*, 3:19-cv-1628 (CSH), 2022 WL 3106965 at *27 (D. Conn. Aug. 4, 2022).

10

The summary judgment record establishes that Plaintiff was afforded formal, advanced notice of his disciplinary hearing.  ECF No. 52-7 at 3 ¶¶ 10, 12.  Additionally, he was provided with notice of the evidence that was to be used against him at the hearing, *id.* at 4 ¶¶ 16—18, and, at his proceeding, Plaintiff was permitted to present evidence and argument in his defense.  ECF No. 52-2 at 9 ¶¶ 59, 60, 62.  The complaint makes passing reference to video evidence of the incident that was not presented at the hearing, however, the summary judgment record provides no indication that Plaintiff ever asked the Defendants to obtain such evidence in advance of his disciplinary hearing.[5]  ECF No. 52-2 at 8 ¶ 58.

To the extent that Plaintiff's allegations can be interpreted to allege a deprivation of due process simply by bringing a false charge against him, "[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."  *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).  Further, to the extent Plaintiff seeks to hold Hearing Officer Grimaldi liable for reaching an incorrect adjudication of guilt, his claim fails because the Due Process Clause does not mandate disciplinary hearings that reach correct outcomes, but only that a disciplinary adjudicator reaches a decision that is supported by "'some evidence in the record.'"  *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004) (quoting *Superintendent v. Hill,* 472 U.S. 445, 454 (1985)).  Because Hearing Officer Grimaldi indisputably relied upon specific evidence to conclude that Plaintiff had

---

[5] In his administrative appeal, Plaintiff asserted that he was not permitted to admit video evidence during his disciplinary hearing.  ECF No. 52-4 at 94.  Hearing Officer Grimaldi does not recall, but also does not dispute, that Plaintiff sought to introduce video evidence during his administrative hearing.  ECF No. 52-6 at 5 ¶ 24.

violated a disciplinary offense, his finding of guilt—right or wrong—did not violate Plaintiff's due process rights.

Similarly, Plaintiff had no right to a correct adjudication of his administrative appeal. Thus, to the extent that Plaintiff asserts that District Administrator William Mulligan violated his due process rights simply by adversely ruling upon his administrative appeal, Plaintiff has failed to state a claim upon which relief may be granted.[6]

Considering the record in this case, Plaintiff was given notice of the proceedings and of the evidence against him, and he had an opportunity to be heard before a prison official made a disciplinary finding that (even if not correct) was supported by some evidence. Thus, Plaintiff has failed to demonstrate a violation of his due process rights.

### 3. Harmless Error

Defendants contend that any presumed violations of Plaintiff's procedural due process rights were harmless. ECF No. 52-1 at 28—30. Specifically, to the extent that Plaintiff asserts being wrongfully deprived of the opportunity to present video evidence[7] during his disciplinary hearing, Defendants argue that "it is not clear that such evidence could or would have changed the outcome of the hearing." *Id.* at 29. The court agrees.

Plaintiff appears to claim that the defendants prevented him from presenting a defense to his disciplinary charge by not allowing him to admit video evidence during his hearing. However, in his complaint and filings in opposition to the Motion for Summary

---

[6] An officer assigned to rule upon a disciplinary appeal could potentially incur § 1983 liability by noticing and failing to rectify a violation of an inmate's procedural due process rights. *See Thomas v. Calero*, 824 F. Supp. 2d 488, 504 (S.D.N.Y. 2011). In this case, however, the summary judgment record does not support an inference that Plaintiff's due process rights were violated before (or during) his hearing.

[7] Defendants also argue that the outcome of Plaintiff's disciplinary hearing was not affected by the nondisclosure of an audio recording of the phone call in which Plaintiff allegedly made incriminating statements. ECF No. 52-1 at 29. However, the court does not construe Plaintiff's pleading to allege that the failure to provide this audio recording deprived him of due process.

Judgment, Plaintiff fails to state how this video evidence would have been relevant or exculpatory as to his disciplinary charge.  Without such an explanation of what the video would have shown in connection with the charge at issue, any failure to consider this evidence amounts to harmless error.  *See Allah v. Semple*, 3:18-cv-887 (KAD), 2019 WL 6529821 at *8—9 (D. Conn. Dec. 4, 2019) (dismissing claim and finding harmless error where the plaintiff failed to present evidence showing how excluded evidence could have affected the outcome of disciplinary hearing).

### III.    Judgment on the Pleadings

Plaintiff has filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Procedure 12(c).  ECF No. 54 at 1.

"Judgment on the pleadings 'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'"  *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 339 (S.D.N.Y. 2008), *aff'd,* 355 F. App'x 507 (2d Cir. 2009) (quoting *Sellers v. M.C. Floor Crafters Inc.,* 842 F.2d 639, 642 (2d Cir. 1988)).  As a result, such a motion "only has utility when all material allegations of fact are admitted or not controverted in the pleadings."  *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021) (citation omitted).

In their answer to the complaint, Defendants generally denied allegations that would support a finding that they violated Plaintiff's due process rights.  ECF No. 29 at 2—4, ¶¶ 1—16.  Defendants also invoked qualified immunity as an affirmative defense to Plaintiff's claims.  *Id.* at 4.  Because the complaint and answer do not agree upon facts

establishing the defendants' liability for a violation of Plaintiff's due process rights, judgment on the pleadings is not appropriate here and Plaintiff's Motion is **DENIED.**

## IV.    CONCLUSION

Defendants' Motion for Summary Judgment, ECF No. 52, is **GRANTED** and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 54, is **DENIED.**

The Clerk of the Court respectfully is directed to render judgment for Defendants and to close this case, please.

**IT IS SO ORDERED** this 25th day of July, 2023, at Hartford, Connecticut.

_____/s/_____

Omar A. Williams
United States District Judge

14